IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MOSS & ASSOCIATES, LLC,<br><br>     **Plaintiff,**<br><br>    v.<br><br>E LIGHT ELECTRIC SERVICES, INC.,<br><br>     **Defendant.** | 1:16-cv-702-WSD |

**OPINION AND ORDER**

This matter is before the Court on Defendant E Light Electric Services, Inc.'s ("Defendant") Motion to Transfer Venue [4] ("Motion to Transfer"). Also before the Court is Plaintiff Moss and Associates, LLC's ("Plaintiff") Motion for Brief Surreply to New Evidence and Argument in Defendant's Reply [14] ("Surreply Motion").

**I.    BACKGROUND**

   A.   Facts

This action arises out of a subcontract (the "Subcontract") between Plaintiff and Defendant for Defendant to provide electrical installation work for a photovoltaic solar energy production facility in Bainbridge, Georgia (the "Project"). Bainbridge is in Decatur County, Georgia. In March 2015, Defendant

began performing work on the Project.  Defendant maintains that, in the course of its performance under the Subcontract, it discovered the 800-acre Project area lacked a comprehensive storm water management system, which caused flooding, ponding, and extreme soil saturation for extended periods of time following an average rain event.  (Mot. to Transfer at 2).  Because of these conditions, Defendant states it incurred a substantial expense and experienced substantial delays, but that nevertheless Defendant substantially completed its work, on time, in December 2015.  (Id.).  The parties have been engaged in ongoing discussions to resolve Defendant's claims for monies due.

Article 25 of the Subcontract states that "either party may seek redress of its grievances . . . in a court of competent jurisdiction located in the State in which the Project is located."  ([1.1] at 19).  Article 31 provides that the "Subcontractor hereby consents to personal jurisdiction and venue for any action arising out of a breach or threatened breach of this Subcontract exclusively in the United States District Courts of Georgia, or in the Superior Courts of Georgia, in the County where the project is located."  (Id. at 21).

B.   Procedural History

On January 22, 2016, Defendant sent Plaintiff a letter stating its intention to file a lawsuit against Plaintiff to collect unpaid monies under the Subcontract.  On

February 3, 2016, Plaintiff filed its Complaint [1.8] in the Superior Court of Fulton County, Georgia, seeking a declaratory judgment with respect to the Subcontract. On February 4, 2016, Plaintiff sent Defendant a courtesy copy of the Complaint, accompanied by a cover letter in which Plaintiff stated: "We were disappointed to see that E Light improperly threatened to sue Moss in your last letter [dated January 22, 2016]. To protect our rights, we have commenced legal proceedings in the Fulton County Superior Court." ([4.2] at 7). On March 4, 2016, Defendant filed its Notice of Removal [1].

On February 18, 2016, Defendant filed, in the Albany Division of the United States District Court for the Middle District of Georgia ("Middle District"), an action (the "Middle District Action") against Plaintiff arising from the same Subcontract at issue in this action. The Albany Division serves Decatur County.

On March 11, 2016, Defendant moved to transfer this action to the Albany Division of the Middle District. Defendant contends transfer is appropriate because the Middle District is the district where the Project is located. Defendant seeks to consolidate this action with the Middle District Action after transfer. Defendant argues the first-filed rule does not apply here, and the transfer factors under 28 U.S.C. § 1404(a) ("Section 1404(a)") weigh in favor of transfer. Defendant also argues that the forum selection clause in Article 31 of the

Subcontract mandates transfer.

Plaintiff opposes transfer, arguing that (1) the facts here do not support applying an exception to the first-filed rule, and (2) the transfer factors under Section 1404(a) do not weigh in favor of transfer. Plaintiff argues the forum selection clause in Article 25 controls. On April 22, 2016, Plaintiff filed its Surreply Motion, arguing Defendant presented new evidence and arguments in its reply brief. The Court, in its discretion, grants Plaintiff's Surreply Motion and considers the arguments presented in it.

## II.   DISCUSSION

### A.   Forum Selection Clause

"As a general rule, a court need not accord any deference to the first-filed forum in the face of a clearly applicable forum selection clause." Mun. Gas Auth. of Ga. v. Town of Smyrna, Tenn., No. 1:11-CV-2476-JEC, 2012 WL 1038649, at *4 (N.D. Ga. Mar. 27, 2012) (citing In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) ("Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system.")); see also Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex., 134 S. Ct. 568, 579 (2013) ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the

forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied.").

Article 25 of the Subcontract states that "either party may seek redress of its grievances . . . in a court of competent jurisdiction located in the State in which the Project is located."  ([1.1] at 19).  Article 31 of the Subcontract provides that the "Subcontractor hereby consents to personal jurisdiction and venue for any action arising out of a breach or threatened breach of this Subcontract exclusively in the United States District Courts of Georgia, or in the Superior Courts of Georgia, in the County where the project is located."  (Id. at 21).

Defendant argues these provisions are not in conflict, because they require redress be sought in a "court of competent jurisdiction" in Georgia, but that the court must be in the county where the project is located.  ([12] at 6 n.1).  Defendant thus urges the Court to interpret the Subcontract to require transfer to the Middle District.

Plaintiff argues that Article 25 should be read as the forum selection clause and Article 31 should be read as "merely a waiver of jurisdiction and venue defenses."  ([6] at 12).  In support of its argument, Plaintiff relies on Olympus Media, LLC v. City of Dunwoody, 780 S.E.2d 108, 112 (Ga. Ct. App. 2015).  The Olympus court noted "the law's preference for 'the construction of the contract

which would uphold the contract in whole and in every part, and would not construe one provision of the contract so as to defeat the plain import of another provision." Id.  Plaintiff also relies on Avion Sys., Inc. v. Thompson, 666 S.E.2d 464, 467 (Ga. Ct. App. 2008), which held that "when a provision specifically addresses the issue in question, it prevails over any conflicting general language." Id.  Plaintiff appears to argue that, because Article 25 is titled "Disputes," it "is the provision that specifically addresses the issue in question, namely to which forum(s) did the parties agree to submit disputes arising under the Subcontract." ([6] at 12).

The Court finds that Article 31 specifically addresses the issue in question here, namely the courts in which the parties agreed jurisdiction and venue are appropriate.  It is axiomatic that Georgia contract construction principles provide that a provision that specifically addresses an issue in question prevails over any conflicting general language.  See Avion, 666 S.E.2d at 467; RLI Ins. Co. v. Highlands on Ponce, LLC, 635 S.E.2d 168, 172 (Ga. Ct. App. 2006); Woody's Steaks, LLC v. Pastoria, 584 S.E.2d 41, 44 (Ga. Ct. App. 2003); see also Stonegate Bank v. TD Bank, N.A., 596 F. App'x 834, 845 (11th Cir. 2015) (discussing Georgia law).  Georgia courts reason that "[s]uch a construction effectuates the clear intent of the parties" and upholds the contract "in whole and in every part[.]"

Avion, 666 S.E.2d at 467 (internal quotation marks omitted).  For instance, in Avion, the employment contract provided that the employee was a "full time employee at will."  Id. at 466.  The contract then provided that the employee "agrees to provide on-site consulting services . . . for a minimum of twelve (12) months[,] and that the employee agreed to certain restrictions for "a period of twelve (12) months following the completion of project[.]"  Id.  The Court found that the specific provisions regarding the time and manner in which the employee could terminate employment prevailed over the boilerplate "at will" language, because the specific provisions reflected the intent of the parties.  See id. at 467.  Applying this well-established contract construction principle, here, the specific language in Article 31 provides that the subcontractor consents to personal jurisdiction and venue "exclusively" in the "County where the project is located."  The general language in Article 25 that provides that a party may file suit in "a court of competent jurisdiction" is akin to the kind of boilerplate contract language discussed in Avion.

    Plaintiff's interpretation of Article 31 is too narrow, and its interpretation of Article 25 is too broad.  Plaintiff interprets Article 31 as merely a waiver of jurisdiction and venue defenses, but this interpretation ignores the word "exclusively" in the provision.  See Estate of Pitts v. City of Atlanta, 746 S.E.2d

7

698, 706 (Ga. Ct. App. 2013) (a reading that renders a word meaningless is "contrary to the canon that, 'if possible, every word . . . is to be given effect.'" (brackets omitted) (quoting Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 221 (West 2012))).  That Defendant consents to jurisdiction and venue "exclusively" in one location necessarily excludes other locations—a decision each party made in entering into the Subcontract.  Conversely, Plaintiff implicitly reads *into* Article 25 the requirement that a party may seek redress in *any* court of competent jurisdiction, rather than "a" court of competent jurisdiction, to which the parties agreed in Article 31.  Reading the contract as a whole, and construing Articles 25 and 31 so as not to defeat the plain import of either, the Court determines that the parties intended that disputes under the Subcontract must be brought exclusively in one of the courts of competent jurisdiction described in Article 31.  Because the Project is located in Decatur County, the United States District Court for the Middle District of Georgia or the Superior Court of Decatur County are the alternative forums the parties selected.  Defendant's Motion to Transfer is granted pursuant to the valid forum selection clause in the Subcontract.

B.   Applicability of the First-Filed Rule

Even if the Subcontract did not contain a forum selection clause, the Court finds transfer is appropriate because the first-filed rule does not apply here. "Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005).[1] The Eleventh Circuit requires "that the party objecting to jurisdiction in the first-filed forum carry the burden of proving compelling circumstances to warrant an exception to the first-filed rule." Manuel, 430 F.3d at 1135 (internal quotation marks omitted). The first-filed rule, however, "is not an absolute, mandatory, inflexible requirement. Rather, courts have routinely cautioned against rote, mechanical application of the first-filed rule, and instead weight the first-filed issue in the broader context of the ends of

---

[1]   Although this action was removed to this Court after Defendant filed the Middle District Action, "for purposes of applying the first-filed rule, removal does not affect the primacy of th[is action]." Nebula Glass Intern., Inc. v. Burdnick Converting, Inc., No. 09-61256-CIV, 2010 WL 473330, at *1 (S.D. Fla. Feb. 5, 2010) (citing Matter of Meyerland Co., 960 F.2d 512, 516 n.6 (5th Cir. 1992) ("[O]nce the case is removed, it is treated as if it had commenced in federal court."); First Republic Bank Fort Worth v. Norglass, Inc., 958 F.2d 117, 119 (5th Cir. 1992) ("[W]hen case is removed the federal court takes it as though everything done in state court had in fact been done in federal court.")).

justice." Lexington Ins. Co. v. Rolison, 434 F. Supp. 2d 1228, 1245 (S.D. Ala. 2006) (citing Lockheed Martin Corp. v. L-3 Commc'ns Corp., 405 F. Supp. 2d 1381, 1383 (N.D. Ga. 2005)).  One equitable factor that courts have considered in assessing whether the first-filed rule applies is whether the first-filed action was filed in anticipation of a second-filed lawsuit.  Id. (citing Manuel, 430 F.3d at 1135).  The Court's discretion also is guided by equitable considerations imbedded in the factors in a Section 1404(a) analysis.  See Manuel, 430 F.3d at 1135 ("Some courts simply apply the same general factors that are considered in a motion to transfer under 28 U.S.C. § 1404(a).").

Here, on January 22, 2016, Defendant sent Plaintiff a letter stating its intent to file a lawsuit against Plaintiff to collect unpaid monies under the Subcontract.  On February 3, 2016, Plaintiff filed its Complaint.  On February 4, 2016, Plaintiff sent Defendant a courtesy copy of the Complaint, accompanied by a cover letter in which Plaintiff stated:  "We were disappointed to see that E Light improperly threatened to sue Moss in your last letter [dated January 22, 2016].  To protect our rights, we have commenced legal proceedings in the Fulton County Superior Court."  ([4.2] at 7).  The timing of the Complaint—filed less than two weeks after a threat of litigation—and the contents of the cover letter indicate this action was an anticipatory filing.  Cf. Manuel, 430 F.3d at 1136-37 (filing was not anticipatory

where there was no imminent threat of litigation).

The fact that this action is anticipatory does not end the Court's inquiry. "Even if a court finds that a filing is anticipatory, this consideration does not transmogrify into an obligatory rule mandating dismissal." Manuel, 430 F.3d at 1135. "Such a finding still remains one equitable factor among many that a district court can consider in determining whether to hear a declaratory judgment action." Id. at 1135-36. Other equitable factors include the 1404(a) factors set out by the Eleventh Circuit in Manuel. These factors include: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 & n.1 (11th Cir. 2005).

    1.    Weight Accorded to Plaintiff's Choice of Forum

In the Eleventh Circuit, there exists a "strong presumption against disturbing plaintiff's initial forum choice." SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100 (11th Cir. 2004). Generally, the plaintiff's

choice should not be disturbed unless the balance of private interests is strong in the defendant's favor.  Id. at 1101.  A plaintiff's choice of venue is accorded less weight, however, under two circumstances.  First, a plaintiff's forum choice is entitled to less deference where the majority of the operative events occurred in a different district than that which the plaintiff chose.  See Benton v. Crane Merchandising Sys., Inc., 2013 WL 4779211, at *2 (M.D. Ga. Sept. 5 2013) (citing A.J. Taft Coal Co. v. Barnhart, 291 F. Supp. 2d 1290, 1310 (N.D. Ala. 2003); Bell v. K Mart Corp., 848 F. Supp. 996, 1000 (N.D. Ga. 1994)).  Second, a plaintiff's choice of venue is afforded less weight when a plaintiff files suit outside of its home forum.  Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed.); see also Spanx, Inc. v. Times Three Clothier, LLC, 2013 WL 5636684, at *3 (N.D. Ga. Oct. 15, 2013) (citing In re Link A Media Devices Corp., 662 F.3d 1221, 1223 (Fed. Cir. 2011) (explaining that the plaintiff's choice of forum is entitled to less deference when plaintiff files suit outside of its home forum)).

Here, Plaintiff, a citizen of Florida, Texas, and Nevada, (Second Am. Notice of Removal [18] ¶ 6), filed suit outside of its home forum.[2]  Importantly, the majority of the operative events that gave rise to the lawsuit occurred in the Middle District.  The Court finds that Plaintiff's choice of venue is accorded less weight, because all of the operative events occurred in a different district than that which Plaintiff chose, and because Plaintiff filed this action outside its home forum.

### 2. The Locus of Operative Facts and the Interests of Justice

The Court finds the locus of operative facts is in the Middle District, including because the Project is located there and the circumstances of the alleged breach of the Subcontract occurred there.  Plaintiff does not dispute that the locus of operative facts is in the Middle District, but argues that this factor is neutral—that is, it does not weigh in favor of either party—because the dispute does not concern controversies in which the Middle District has a particular interest.  Plaintiff's implied argument is that the separate "interests of justice" factor

---

[2]  The policy that apparently undergirds this home forum requirement is that a plaintiff's forum selection is afforded less weight where the plaintiff files—voluntarily or necessarily—in a forum outside its home.

required in the Manuel analysis should be considered in analyzing the locus of operative facts factor. Plaintiff's argument that the dispute is a commercial dispute between two corporate entities with registered offices in Atlanta, and thus the locus of operate facts is "centered" there and that the interests of justice are served there, wrongfully conflates these two analysis prongs and is inconsistent with the analysis required under Manuel.

      Setting aside whether it is appropriate to consider the locus of operative facts factor and the interests of justice factor together, Plaintiff's argument ignores that the citizens of Decatur County were employed on the construction of the Project, local government officials and regulatory officials were responsible for overseeing the permitting and construction of the Project, and 20-25 local citizens are expected to be permanently employed by the solar facility once it is fully operational. ([12] at 11). In short, the citizens of the Middle District have a greater interest in resolving this action than do the citizens of this District. Plaintiff's argument that "it is safe to say that the average employee hired to work in the completed plant has little interest in whether a sub-contractor . . . released its claims or not," ([14.1] at 3), takes too narrow a view of the types of public interest considered by courts in the Manuel analysis. By Plaintiff's reasoning, any district court in which the parties conduct business has an equal interest in the outcome of

14

this action, regardless of the underlying facts of the action.  That is not a practically or logically sound analysis.  The Court finds the locus of operative facts weighs in favor of transfer, as do the interests of justice.

### 3.     Convenience and Availability of Witnesses

The most important factor in considering a motion to transfer is the convenience of the witnesses.  Huntley v. Chicago Bd. of Options Exchange, 132 F. Supp. 3d 1370, 1372 (N.D. Ga. 2015) (citing Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352 (N.D. Ga. 2004)).  In evaluating the convenience of witnesses, the Court focuses on non-party witnesses' willingness and ability to testify in the forum.  See Spanx, 2013 WL 5636684, at *2 (citing Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010)).  Here, Defendant contends the relevant witnesses to the parties' claims primarily reside in or near Decatur County, Georgia, including Defendant's subcontractor and former employees performing work on the Project.  Defendant specifically identifies the following individuals Defendant hired as Project Superintendents:  (1) Joshua Campbell, Malone, Jackson County, Florida; (2) Joseph Freeman, Blakely, Early County, Georgia; (3) Robert Lee Kraft, Blakely, Early County, Georgia; and (4) Robert Lee Kraft, Jr., Blakely, Early County, Georgia.  These individuals reside in southern Georgia or northern Florida and are

no longer employed by Defendant. These Project Superintendents performed work on the Project, and thus have personal knowledge of the parties' performance under the Subcontract, Project site conditions, and the effects of the flooding on the site and work progress. Defendant contends they will be critical witnesses for Defendant's claims and defenses. Defendant also notes it subcontracted certain tasks to MetroPower, Inc., a Georgia Corporation with its principal place of business in Dougherty County, Georgia, whose officers and employees associated with the Project reside in and around Albany, Georgia. In the event these non-party witnesses are unwilling to testify at trial in Atlanta, Defendant argues the parties would be limited in their ability to subpoena the witnesses under the geographical limitations set forth in Rule 45 of the Federal Rules of Civil Procedure.

     Plaintiff argues that "the most convenient forum would be the Northern District of Georgia simply because it is far easier to fly to Atlanta from out of state—where almost all the non-party witnesses live and work—than it is to fly to Atlanta, and then drive three hours to Albany, Georgia." ([6] at 15-16).[3] Aside

---

[3] There are, of course, commercial flights to Albany, Georgia and Tallahassee, Florida.

from Lovick Evans, the non-party witnesses Plaintiff identifies do not appear to be key witnesses. The majority of the witnesses are employees of a different subcontractor, First Solar, which performed work on a different aspect of the Project, presumably under a different subcontract. Given the number of key non-party witnesses residing in or near the Middle District who performed work under the Subcontract at issue in this litigation, the Middle District is the more convenient forum. This factor weighs in favor of transfer.[4]

After considering the facts here, the Court concludes that, even if the Subcontract did not contain a forum selection clause requiring this action to be brought in the Middle District, compelling circumstances warrant an exception to the first-filed rule. This action is an anticipatory action, and the Section 1404(a) factors weigh in favor of transfer, including because the Project at issue is in the Middle District, the performance of the Subcontract at issue took place in the Middle District, the Middle District has a greater interest in the outcome of this action, and a majority of the key non-party witnesses reside in or around the Middle District. Defendant's Motion to Transfer is granted.

---

[4] The Court finds the remaining Section 1404(a) factors do not weigh in favor of either party.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Moss and Associates, LLC's Motion for Brief Surreply to New Evidence and Argument in Defendant's Reply [14] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant E Light Electric Services, Inc.'s Motion to Transfer Venue [4] is **GRANTED**.  This action is hereby **TRANSFERRED** to the Albany Division of the United States District Court for the Middle District of Georgia.

**SO ORDERED** this 1st day of September, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE